IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ex rel., HAROLD M. TATE,<br><br>  Plaintiff,<br><br>vs.<br><br>HONEYWELL, INC.,<br><br>  Defendant. | No. CIV 96-0098 PK/LFG |

MEMORANDUM OPINION AND ORDER

  THIS MATTER comes on for consideration of Defendant Honeywell's Motion for Summary Judgment filed July 1, 2002. Doc. 148. Upon consideration thereof,

  (1) Summary judgment may be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party demonstrates the absence of a genuine issue of material fact on an element as to which the non-moving party bears the burden of proof, then the burden shifts to the nonmoving party to show that contested material factual issues exist. Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).  The non-moving party must come forward with significant probative evidence supporting the allegations in the complaint, and not merely rest on the pleadings or conclusory assertions to create a genuine issue of material fact.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  All reasonable inferences from the summary judgment evidence are drawn in favor of the non-movant.  <u>Id.</u> at 255.

(2) The Relator brought this *qui tam* action pursuant to 31 U.S.C. § 3730(b)(1), seeking to impose liability on the Defendant Honeywell, Inc. ("Honeywell") for alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729.  The government declined to intervene.

(3) In the Second Amended Complaint, Relator alleges three counts of fraud against Honeywell.  Doc. 60.  In Count I, he claims that Honeywell knowingly submitted false claims to the United States within the meaning of 31 U.S.C. § 3729(b).  Honeywell had subcontracted to provide flat panel glass displays ("glass displays") for the F-16 fighter aircraft.  Relator claims that Honeywell knowingly misclassified the glass displays as "major subcontract" items instead of "handled material" in violation of the cost accounting standards previously submitted to the government in Honeywell's disclosure statement.  Relator alleges that consequently,

      from 1993 when the F-16 contract was initiated until the close of the contract, costs were knowingly shifted from the F-16 subcontract, a foreign military sales contract under which the costs were to be paid by foreign governments, to other contracts with the United States government. According to the Relator, this resulted in a lower price on foreign military sales contracts, with the United States improperly absorbing overhead that should have been allocated to foreign military sales contracts. Therefore, Relator alleges that every claim for payment under most of Honeywell's federal contracts during this time period constituted a false claim under 31 U.S.C. § 3729(a)(1) and (2).

(4) Count II alleges that after the misclassification of the glass displays as major subcontract items, Honeywell employees charged work on the display subcontract to an overhead account in a manner inconsistent with the major subcontract classification, consequently inflating the overhead rates charged to the government. Relator alleges that these mischarges constitute false claims and statements under 31 U.S.C. § 3729.

(5) Count III alleges that once Honeywell classified the glass displays as a major subcontract, it then treated costs under the contract as handled material costs and violated the FCA in submitting progress

   billing statements improperly including material overhead charges. The submission of the progress payments were allegedly false claims and statements under 31 U.S.C. § 3729.

(6) Honeywell seeks summary judgment on Count I contending that Relator cannot prove the elements of its case, specifically falsity, scienter or reliance. See Celotex, 477 U.S. at 322-24. On Counts II and III, Honeywell seeks summary judgment claiming that Relator cannot establish jurisdiction, and in the alternative, that any incorrect charges in Count II were unintentional and immaterial and any incorrect charges in the progress billing system were promptly corrected and could not have resulted in a false claim to the United States. The court grants summary judgment on Count I because Relator cannot establish scienter, and the court need not pass on the other grounds. On Counts II and III, summary judgment is appropriate because Relator cannot establish jurisdiction, and again it is unnecessary to pass on the other grounds urged.

(7) A suit brought under the FCA is a claim for fraud perpetrated against the government of the United States, United States ex rel. Holmes v. Consumer Ins. Group, 279 F.3d 1245, 1247 (10th Cir. 2002), and to prevail, a relator must show by a preponderance of the evidence that (1) the defendant made a claim against the United States; (2) the

claim was false or fraudulent; (3) the defendant knew that the claim was false or fraudulent. United States ex rel. Stone v. Rockwell Int'l Corp., 282 F.3d 787, 817 (10th Cir. 2002) (Briscoe, J., concurring in part and dissenting in part).

(8) With regard to Count I, the cost accounting standards that governed Honeywell's subcontract for glass displays defined a major subcontract as "a subcontract performed under Honeywell DASD [Defense Avionics Systems Division] Management as the system or subsystem integrator for a separate and identifiable scope of work which is (1) foreign in nature or scale to Honeywell DASD technology, and (2) the value of the subcontract exceeds $3 million." Doc. 149, tab 28 at 33. Relator argues that the active matrix liquid crystal display assembly was merely a purchased part that is put into a DAS [Defense Avionics Systems] factory product, and therefore did not meet the requirements that Honeywell be the system or subsystem integrator for a separate and identifiable scope of work, and that the system be foreign in nature to Honeywell DASD technology.

(9) Relator first raised the concerns now contained in Count I in an internal memorandum prepared in 1993 while he was a Honeywell employee. Doc. 149, tab 20 at 54. In response to Relator's memo,

numerous Honeywell employees, including Honeywell's DASD Chief Financial Officer, Chief Compliance Officer, and several cost accounting experts, investigated Relator's claims and determined that the subcontract was properly classified as a major subcontract. Relator did not respond to these conclusions when they were published in a circulated memorandum, but instead indicated that, if Honeywell disclosed to the government the classification of the subcontract and that classification was correct, then the government would likely not find Honeywell culpable of a cost accounting violation. Doc. 149, tab 20 at 58, 63-65.

(10) Relator's own expert gave deposition testimony that there was "some element of judgment" in determining whether the glass displays met the criteria for classification as a major subcontract, and that reasonable experts could disagree over the appropriate designation, based on the record in this case. Doc. 149, tab 16 at 142-43.

(11) Furthermore, two auditors acting with the Defense Contract Audit Agency did not take exception to the classification of the glass displays as major subcontract items. Both William Brown and Phillip Quarles evaluated Honeywell's compliance with cost accounting standards previously disclosed by Honeywell. Doc. 149, tab 3 at 4, 34-35, 39-40; tab 15 at 4-5. Both men knew of the

classification that Honeywell assigned to the displays, and neither took exception to that classification. Doc. 149, tab 3 at 84-85; tab 15 at 29. Further, both auditors conceded that, under the criteria prescribed in Honeywell's disclosure statement of cost accounting standards, the display panel subcontract was a major subcontract. Doc. 149, tab 3 at 83, 178, 188, 190-91; tab 15 at 29. After examining the basis of Relator's complaint in this case, Mr. Brown did not agree with allegations regarding the alleged misclassification. Doc. 149, tab 3 at 173-74, 178. The court has carefully reviewed Relator's evidentiary submissions concerning the claimed deficiencies in their opinions including lack of adequate evidence and documentation to support their opinions. See Doc. 151 at 11-13; see also, e.g., Doc. 150, tab 3, tab 14, tab 67. However, on the issue of whether Honeywell acted with scienter in its cost classification, the evidence falls far short of establishing a genuine issue of material fact.

(12) The FCA prohibits the knowing presentation of false claims for government payment or approval. 31 U.S.C. § 3729(a). "Knowing" and "knowingly" are defined in the Act to mean that the defendant had actual knowledge of the pertinent information or acted in deliberate ignorance or in reckless disregard of the truth or the

falsity of that information. 31 U.S.C. § 3729(b). The question is whether Honeywell knew (or would have known were it not for deliberate ignorance or reckless disregard) that its classification of the glass displays would lead the government to pay related claims that should have been instead paid for by foreign governments. In determining Honeywell's knowledge (or lack thereof) of the falsity, the context in which the actions took place becomes very important.

(13) At best this is a legitimate dispute over the proper classification of a product within the parameters of the applicable cost accounting standards and practices. Relator concedes that Honeywell did not hide the classification of the subcontract from the government. Doc. 149, tab 20 at 66. See United States ex rel. Butler v. Hughes Helicopters, Inc., 71 F.3d 321, 326-28. The evidence in this case uniformly suggests that Honeywell reasonably complied with the applicable standards. In order for the Relator to counter evidence that Honeywell openly examined the issue of proper classification of the glass displays, consulted the company's cost accounting experts at corporate headquarters in Minneapolis, and openly submitted this classification to the government, along with the government's apparent acceptance of that classification, Relator must provide something that clearly suggests that Honeywell knew that the

classification was false, or otherwise indulged deliberate ignorance or reckless disregard of the truth or falsity of the classification. However, the only support for Honeywell's knowledge of the falsity of the classification offered by the Relator is that Honeywell DASD did not disclose the major subcontract classification of the glass displays to Honeywell's Administrative Contracting Officer ("ACO") and that it did not seek the opinion of legal counsel. Relator claims that this inaction amounts to reckless disregard of the truth. At most, failing to secure the ACO's opinion or legal counsel regarding proper subcontract classification might be characterized as deliberate ignorance of the truth or falsity of the submitted claims. See United States ex rel. Quirk v. Madonna Towers, Inc., 278 F.3d 765, 768 (8th Cir. 2002). However, given the support for the subcontract classification, failing to secure these second opinions, without more, is not the type of deliberate ignorance that can form the basis for a lawsuit brought under the FCA. Id. DASD personnel as well as experts at Honeywell's headquarters reviewed and approved the classification.

(14) On the issue of the classification of the glass displays, the government's knowledge is not an absolute defense to an FCA action, but on occasion the "government's knowledge of or

cooperation with a contractor's actions is so extensive" that Honeywell could not as a matter of law possess the requisite state of mind to be liable under the FCA. Shaw v. AAA Engineering & Drafting, Inc., 213 F.3d 519, 534 (10th Cir. 2000); United States ex rel. Durcholz v. FKW Inc., 189 F.3d 542, 545 (7th Cir. 1999) (government's prior knowledge and approval of claim for payment negates scienter required under FCA). Relator's arguments that the government agents conducted inadequate audits[1] or that they were not the proper authorities, while perhaps relevant to the issue of falsity, have little bearing on the issue of scienter. No evidence indicates that at the time of the events in question Honeywell knew of any audit irregularities or omissions that would render reliance upon the auditors' work unreasonable. While not dispositive, the government's involvement in this issue, along with Honeywell's own evaluation of the issue and open presentation to the government, are

---

[1] When asked if Honeywell would have made knowing false statements and submissions had the government approved the major subcontract classification, Mr. Tate's position was that the government would have to be right (correct) in its classification. Doc. 149, tab 20 at 65-66. He explained that his opinion "was based on the fact that my position with the DCAA and the ACO is that they make decisions and determinations that are wrong all the time. It just has been my experience with them." Id. at 65. He further testified that "when I was representing Honeywell or DAS, I disagreed with the DCAA all the time about things." Id.

significant. In light of these actions, and contrary to Relator's claim, Honeywell had no reason to pursue a legal opinion or seek further confirmation that the classification was in accordance with the proper standards. Add to this the numerous statements from experts, government auditors and Relator's own experts about the reasonableness of the classification, and the conclusion must be no reasonable trier of fact could conclude that Honeywell knowingly deceived the government. The government was not duped by Honeywell's classification. The issue of whether Honeywell's classification was in fact proper need not be decided because Honeywell did not knowingly submit false or fraudulent claims to the government within the meaning of the FCA. Summary judgment is granted on Count I.

(15) Honeywell argues that Counts II and III are based upon facts that the government disclosed to the Relator only after the government investigated the claims. This court has no jurisdiction over qui tam actions that are "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action is an original source of the

11

information." 31 U.S.C. § 3730(e)(4)(A). Since Honeywell has challenged this court's jurisdiction, the burden is on Mr. Tate to show, by a preponderance of the evidence, that jurisdiction exists. United States ex rel Hafter v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999). Mr. Tate must "bear the burden of alleging the facts essential to show jurisdiction and supporting those facts with competent proof. Mere conclusory allegations of jurisdiction are not enough." Id. (citations and quotations omitted).

(16) In determining whether the public disclosure bar to jurisdiction is present in this case, four questions must be addressed: (1) whether the alleged "public disclosure" contains allegations or transactions from one of the listed sources; (2) whether the alleged disclosure has been made "public" within the meaning of the [FCA]; (3) whether the Relator's complaint is "based upon" this public disclosure; and, if so, (4) whether the Relator qualifies as an "original source." United States ex rel King v. Hillcrest Health Ctr., Inc., 264 F.3d 1271, 1279 (10th Cir. 2001) (quoting Hafter, 190 F.3d at 1161). cert. denied, 122 S. Ct. 1205 (2002).

(17) The FCA provides a list of sources from which a public disclosure might come, including "a congressional, administrative, or Government Accounting Office report, hearing, audit, or

*investigation*, or from the news media." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). After Mr. Tate filed the original complaint, the U.S. Attorney's Office and the Defense Criminal Investigative Service ("DCIS") conducted investigations of the allegations therein and later shared certain subpoenaed Honeywell documents relating to such investigations with Mr. Tate. Doc. 148 at 14, Doc. 149, tab 20 at 124-29, 179. The government investigations undertaken in this case qualify as a permissible source of public disclosure. See United States ex rel. Fine v. Advanced Sciences, Inc., 99 F.3d 1000, 1004-05 (10th Cir. 1996); Seal 1 v. Seal A, 255 F.3d 1154, 1161 (9th Cir. 2001) ("investigation" in 31 U.S.C. § 3730(e)(4)(A) includes civil, criminal, administrative, or any other kind of governmental investigation), cert. denied, 122 S. Ct. 1605 (2002).

(18) The next inquiry is whether these disclosures were made "public" when the government shared the results of its investigations with Mr. Tate. Public disclosure occurs when the allegations or transactions are affirmatively disclosed to a member of the public who is a stranger to the fraud, meaning someone not previously informed thereof. United States ex rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1520-21 (10th Cir. 1996). Here, the government disclosed to Mr. Tate, a member of the public,

13

information gathered in its investigation. Doc. 149, tab 20 at 179. Based on this information, Mr. Tate thereafter amended his complaint by adding new counts, Counts II and III. Id. at 178-80. Prior to receiving this information, Mr. Tate was a stranger to the fraud alleged in those counts.

(19) Mr. Tate argues that he alleged in general terms the substance of the claims now contained in Counts II and III in paragraph 12 of his First Amended Complaint filed March 6, 1996. Doc. 151 at 36. According to Mr. Tate, in an effort to clarify, he "point[ed] out examples of mischarging the specifics of which he had learned of while assisting the DCIS in its investigation." Doc. 151 at 36.

(20) It would be true that the First Amended Complaint contains the substance of the subsequently added Counts II and III only if it were sufficient to plead that because of the misclassification originally complained of, every other number generated by Honeywell on this and other contracts and subcontracts will be incorrect and result in false claims against the United States. It is not. The court has carefully reviewed Mr. Tate's depositions–essentially they support the idea that having *overheard* a conversation that the progress billing system "was a mess," Doc. 169 at 50; see also Doc. 149, tab 20 at 127-29, and knowing that the existing accounting system was

14

not set up to handle the burdening of a major subcontract which was a factory material, Mr. Tate "was able to determine some specific mischarges which had occurred, *when* he viewed the documents provided to him by the United States." Doc. 151 at 37 (emphasis added). Mr. Tate offers no competent evidence that he was aware of any alleged fraud until after he reviewed the documents. Id. In fact, Mr. Tate admits that he was "out of the loop" at Honeywell and would have had no actual knowledge of the fraud "if it wasn't in a subpoenaed document." Doc. 149, tab 20 at 125-26, 152; Doc. 170 at 52-53. Because Mr. Tate was a stranger to the fraud at the time, the disclosure to him was "public" for the purposes of the FCA. See also Seal 1, 255 F.3d at 1162 ("Disclosure of information to one member of the public, when that person seeks to take advantage of information by filing an FCA action, is public disclosure.").

(21) The next question is whether the allegations in this case were "based upon" the public disclosure. King, 264 F.3d at 1279. Though Relator's allegations need not rely solely upon the disclosure, they are deemed to be based upon it if there is a "substantial identity" between the two. Id.; United States ex rel. Precision Co. v. Koch Industries, Inc., 971 F.2d 548, 553 (10th Cir. 1992). In light of the discussion of the "public" inquiry above, it is clear that Mr. Tate's

allegations in Counts II and III are based directly upon the documents disclosed to him by the government. Mr. Tate essentially admits the substantial identity between the disclosure and his claims. Doc. 149, tab 20 at 125-29, 149-50, 152, 178-79; Doc. 151 at 37. Because Counts II and III are based on public disclosure, this court has no jurisdiction over those counts unless Mr. Tate satisfies his burden to show that he was the original source of the information.

(22) The FCA defines "original source" to mean "an individual who has [1] direct and independent knowledge of the information on which the allegations are based and [2] has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). To show direct and independent knowledge, Mr. Tate must demonstrate that he discovered the information on which his allegations were based through his own efforts and not by the labors of others, and that his information was not derivative of the information of others. United States ex rel. Stone v. Rockwell Int'l Corp., 282 F.3d 787, 799 (10th Cir. 2002). In Rockwell, the Tenth Circuit made it clear that while a relator need not have knowledge of the actual acts of fraud, specifically the submission of the false claims to the government, a relator is still required to have

knowledge of the underlying facts of the alleged fraud. 282 F.3d at 802. Mr. Tate was unaware of the underlying facts of the alleged fraud until presented with the government's documents, including Honeywell's later reversal of some of the charges. Doc. 149, tab 20 at 129. This is a different situation than <u>Rockwell</u> where the relator claimed that "he learned from studying Rockwell's plans for manufacturing pondcrete that the blocks would leak toxic waste," but was not present at production. 282 F.3d at 803. The mere fact that Mr. Tate knew that others were having difficulty implementing certain cost allocations given a particular accounting system simply does not constitute knowledge of the facts underlying the alleged fraud. Mr. Tate admitted he lacked any direct knowledge about how the progress billing system was or was not set up to handle major subcontract costs. Doc. 149, tab 20 at 150. Furthermore, as described above, Mr. Tate admits that the information confirming his suspicions is derivative of the information provided him by the government. Doc 149, tab 20 at 125-29, 149-56; Doc. 170 at 19-20, 48-49. The court concludes that Mr. Tate cannot meet the requirement of direct and independent knowledge to qualify as an original source. See <u>Hafter</u>, 190 F.3d at 1162-63. For this reason alone, this court has no jurisdiction pursuant to 31 U.S.C. §

3730(e)(4)(A).

(23) There is another independent reason for finding a lack of jurisdiction. To establish his original source status, Mr. Tate must also show that he voluntarily provided the information on which his allegations in Counts II and III are based to the Government before filing his Second Amended Complaint. The FCA requires the Relator to provide the government with "written disclosure of substantially all material evidence and information the person possesses . . . ." 31 U.S.C. § 3730(b)(2); see also 31 U.S.C. § 3730(e)(4)(B); King, 264 F.3d at 1280. Mr. Tate admits that his original disclosure statement contained no information forming the basis of Counts II and III and the court, having reviewed the statement, fully agrees. Doc 170 at 19-20, 77-78; Doc. 1. As discussed above, Mr. Tate received new information forming the basis of Counts II and III prior to filing his Second Amended Complaint. However, he admits that he did not submit a disclosure statement containing this information to the government before filing the Second Amended Complaint. Doc. 149, tab 20 at 178, 180; Doc. 170 at 13. Thus, Mr. Tate has not voluntarily provided the information and therefore cannot qualify as an original source.

(24) Relator asserts that "[n]othing in the qui tam statute requires the

providing of another statement of material fact prior to amending the complaint," and submits he followed the Fed. R. Civ. P. 15 in amending his complaint. Doc. 151 at 37-38. It is axiomatic that the court cannot amend the statute to do away with the requirement which benefits the government in evaluating the claims. Allowing a relator to file one disclosure statement and then add new claims without formal disclosure would be contrary to the policies endorsed by the Tenth Circuit in King. These include encouraging private persons to come forward promptly with their information rather than holding back, and to act quickly when public disclosure has occurred. 264 F.3d at 1281. Filing a disclosure statement was a jurisdictional prerequisite to maintaining suit on Counts II and III. See King, 264 F.3d at 1281.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that Defendant Honeywell's Motion for Summary Judgment filed July 1, 2002 (Doc. 148) is granted.

DATED this 17th day of October 2002, at Santa Fe, New Mexico.

>                 *Paul Kelly Jr.*
>                 _____
>                 United States Circuit Judge
>                 Sitting by Designation

Counsel:

Victor R. Ortega and Andrew S. Montgomery, Montgomery & Andrews, P.A., Santa Fe, New Mexico; Anton R. Valukas, Edward F. Malone and Terrence G. Bannich II, Jenner & Block, LLC, Chicago, Illinois; and Jessie K. Liu, Jenner & Block, LLC, Washington, D.C., for Defendant.

Maureen A. Sanders & Duff Westbrook, Sanders & Westbrook, P.C., Albuquerque, New Mexico; and Nancy Hollander and John Boyd, Freedman Boyd Daniels Hollander Goldberg & Cline P.A., Albuquerque, New Mexico, for Relator